Good morning, Your Honors, and I please the Court. My name is Kirk Kennedy. I'm counsel for the appellant Juan Solis-Diaz in this matter. I wanted to start out by addressing what I thought, and looking at the big picture here, is the core of this appeal. Because we know from the District Court's order that the District Court already agreed there were at least some instances of improper vouching at trial. That's already a given from the District Court's order. Maybe not as many as I argued on the appeal, but the District Court grudgingly had to admit at least a few of the instances were either misstatements of the law or improper vouching about reputation and matters outside the record. So if that's taken as a given, at least that there were some instances, the District Court took it to the other level and did not grant my motion for a new trial because the District Court said, well, looking at the totality of the circumstances, this was not a close case. This was not a close case for issues of credibility, determinations, and for that reason I'm not going to find plain error, and voila, here we are on appeal. Did you only object one time? That's true. That's true. And so then the analysis would be the plain error analysis. Totally on plain error. And that's on me, and that's one of those judgment calls you make in trial. Do I object 22 times in front of a jury and alienate the jury against me? It's a bad call to make, maybe a Hobson's choice. How is the District Court judge supposed to know that something you don't like is coming into evidence when you don't object to it? Well, certainly an objection serves a purpose, to bring a point of error to the court. But, of course, this trial occurred post-Draper v. Rosario where the District Court was now, should be on notice that vouching is improper in a civil trial. It has always been such a criminal. Is the District Court judge supposed to do your job? Certainly not. Certainly not. But that's what plain error is for. Plain error is for that circumstance where you have this error, which is plain and obvious, to remedy something that represents a miscarriage of justice, which is why we're here. But if I could go to this issue of close credibility. Why didn't you submit the entire record to us? That's what I was just about to hit on, and I appreciate you bringing that up. This case is always centered on two stories, always, from the get-go. In 2010, when Mr. Solis was arrested, I was his criminal defense attorney. We went to trial. It's always been two close determinations of what the story is. Mr. Solis runs out of his house at 2.30 in the morning with a rifle thinking he hears some intruders outside. His garage door is going up. He's holding an assault rifle. As he's doing that, Officer Tompkins is in his driveway. He had just pulled over a couple of people. He was the one making the noises. And so you've got two events happening. The garage door is going up. Solis is looking out underneath, holding a rifle. You have the officer out in the driveway seeing the silhouette of a man holding a rifle. And both of them take two different actions. My client's story has always remained the same since the criminal trial, which we won, which a jury of 12 unanimously found him not guilty of assaulting or threatening Officer Tompkins. And that has always been the case. This case went to summary judgment. The district court judge heard all these facts on summary judgment, these same facts, and denied Metro's motion for summary judgment and necessitated an appeal on the issue of qualified immunity to this court, which one of the Honorable Justices actually sat on. Those facts stayed the same. Even in the Ninth Circuit opinion, from that previous appeal, which I put it in the excerpts of record, even in that opinion, you can see we've always had just two stories. And that is a close credibility determination. There were other witnesses who testified in this case, including an expert, but we don't have the benefit of that part of the record. Is that true? There was a crime scene analyst for Metro, but not an expert. That's what I call an expert. Okay. But we don't know what they said. Well, the crime scene analyst talked about the trajectory of the bullets, the nine bullets that Officer Tompkins shot. But is that a part of the record? I'm sorry? Is that a part of the record? Yes, sir, of course. Yes, of course. That's part of the record from the transcript below, but not a record on this appeal. We don't have a transcript of the trial testimony of anybody. No. No, you don't. And that's what's key, right? The trial testimony. That's what we're reviewing. We're not reviewing the summary judgment declarations. Right. We're reviewing the trial testimony. But the whole point I'm trying to get across is under to supplement the record with a trial transcript is not necessary. This is a distraction by the respondents in the case. The evidence, what I'm trying to get across is since the criminal trial, which was won, summary judgment, which was won, the appeal, which was won, all for Mr. Solis, all three different instances, the facts have always stayed the same. And, in fact, even in Judge Dorsey's order, excerpts to record page 3, if you read that first page, Judge Dorsey summarized everything I'm saying right now. Well, wait a minute, wait a minute, wait a minute. So the witnesses get up on the stand and testify. Sure. Right. And they're cross-examined. They're direct examination, cross-examination. And the jurors are just watching the witnesses and listening. And then they get to decide who's truthful or who they believe. Right? Sure. Of course. But here we have the case of a close credibility determination. And what you're saying is that, judges, you don't need to look at the transcript because it's just so obvious. It's obvious what the vouching was, which was the difference maker in this case because the stories of the two main witnesses, Officer Tompkins and Officer Solis, have never changed since the criminal trial. It's always been the same story. That's why this Court does not need three days of trial transcripts to rummage through to see that what I'm saying is exactly true. And what's been said by this Court in the previous appeal, by the District Court on summary judgment, by the District Court in its order that is on appeal now on the very first page, excerpts to record 3. In this particular situation, if I remember correctly, your client wore glasses. Is that correct? He had contacts. But when he went to the garage with his assault rifle, he didn't have those glasses on. No. It was 2.30 in the morning. And then he was .232 drunk. He had been drinking inside of his home, which is still legal. .232. Is that correct? That's what the blood officer was. So he was blind and he was blind drunk when he went out there. Isn't that a credibility problem? Well, Your Honor, I think that's a little too heavy to say he was blind drunk. I mean, point to you, he's a big man. That's three times the limit in various states for driving under the end points. I understand, Your Honor. I understand. But he wasn't driving. He was stumbling out of his garage. And as I said, and the facts have never changed, when the garage door opened, he realized it's a cop outside. The cop sees a man with a gun and starts shooting. The reasonableness of Officer Tompkins' shooting was at the core issue of this case. The vouching is what I've said on this appeal is the ultimate difference maker. The vouching was pervasive. It was repeated. It wasn't just one or two instances. I mean, I've alleged 22 instances of vouching, including bringing in terms about police brutality that are never defined. Well, does that have to do with vouching? Because police brutality, it's an improper argument. It's an improper argument. It's something that's not in the record. Vouching includes arguing things that are not in the record. You have a very generous definition of what we were saying in Draper. The way I read Draper, I mean, Draper talks about bringing in evidence, bringing in matters and argument that were never presented during the trial. Police brutality was never presented. There was a jury instruction, jury instruction number five, which is included in the record, which talks about excessive force. Excessive force and police brutality are two different things. Police brutality, the way it was portrayed, Officer Tompkins was portrayed as the idealized officer, almost Apollo with a badge. He was an officer who could do no wrong in closing. His reputation was of prime importance. He was the kind of officer you want to come to your house and protect you and your family and children. This is what was argued in closing. And so you have this idealized officer, excuse me, who could do no wrong, whose reputation was of prime importance, and all these things are matters outside the record, were not talked about at trial, and counsel would admit that. It was even stated in the judge's order. And then you have this idea of saying this idealized officer would never commit police brutality. Police brutality and excessive force are not one and the same. Police brutality is multiple officers in L.A. beating a man named Rodney King almost to his death with batons. That's police brutality. And this is the case of excessive force and whether Officer Tompkins was justified in shooting nine bullets into my client's garage, two of them hitting through a raised hand and one through his back side. There is a difference. And this phrase was hammered in closing. Counsel gave a very effective closing. And the whole contention is that when you have this close credibility determination, these two stories that have never changed, they are impacted by an overly aggressive, over-the-top closing argument as predicated on numerous instances of vouching, albeit without the necessary 22 objections in front of the jury. I've tried many cases. I've won them and I've lost them, state and federal, criminal, civil, and trying to gauge whether a jury would be offended by objection, objection, objection, you know, is something that you have to gauge in closing. Do you want to save some time for rebuttal? Yeah, sure. Thank you so much. Okay. Thank you. Your Honor. May it please the Court. Craig Anderson on behalf of Officer Scott Tompkins. This was not a close case. Did you try this case? I did try it. You made these arguments? That's my arguments. Yeah. Okay. And it was not a close case. And I would also submit that it was not vouching. It was not a close case because the evidence was overwhelming. There was only one witness that testified in favor of Juan Solis-Diaz, and that was Juan Solis-Diaz. His story was taken apart by the percipient witnesses, the two gentlemen in the car, and the crime scene analyst. Juan Solis-Diaz's story was that he stood for three seconds with his hands raised and then took a bullet through the hand and then was turning to retreat and took a bullet in the buttocks. The crime scene analyst established that the bullet that hit him through the hand was two feet off the ground, where he was holding the rifle crouched, and then the other bullet was when he turned. There was no evidence supporting Solis-Diaz's story. Even the two percipient witnesses said that they saw the gun pointed out at Officer Tompkins. But more importantly to this appeal is that there was no vouching. There were perhaps some statements I could have, or some things I could have said more articulate, but there was nothing that the jury was asked to consider that was outside of the record. The closest call would be the statements that Officer Tompkins' reputation was at issue, but that's a common-sense statement when you're considering that someone is being sued for excessive force. I never stated that he might lose his job, that there would be adverse consequences. Do you disagree with the trial judge who found there were six statements of defense counsel that were improper? I believe the judge found there were four statements of vouching and two statements that were not inaccurate statements of the law. So you disagree with the trial judge who sat through the whole case and said, yeah, there were four instances of vouching, you say there were none? I thought the trial judge did an excellent job. But, yes, I would say that the four statements do not rise to vouching, and then the other two statements I don't believe were inaccurate statements of the law. What those statements were was when I used the term incompetent officer. But I would argue that an unreasonable officer is incompetent, and that was their burden to show that he acted unreasonably. I think a reasonable officer is competent and an unreasonable officer is incompetent. So I don't believe those were inaccurate statements of the law. But if they were, it's certainly ñ Is there any evidence about what is an incompetent officer? Well, I would say that an officer that acts unreasonably. I mean ñ Well, now you're just going around in circles. Yeah. And it's a close call on that one, and I would word it differently now. Did you present an expert witness on how an officer would usually respond or, you know, would normally respond or how they might respond in a situation like this? No. Oftentimes you see these police experts come in and testify. And what they do is they come in and read the policies and procedures to you. And so what we had was Officer Tompkins testifying as to how he was trained, what he was supposed to do, how he was told to act in these situations, and then I compared his actions to the training and the instruction that he had received as a police officer. But, no, there was no expert witness that testified to any of that. But there was evidence in the record of that because the policies, the procedures, and his training was evidence. I think what I've learned from this appeal is that the more I talk, the more trouble I get into. Well, I mean, let me ask you, do you think we really need the transcript of the trial in order to make a fair assessment here? Absolutely. The standard is whether, if misconduct did occur, that it permeated the entire trial, that that misconduct basically tipped the scales in favor of the attorney committing misconduct. And in this case, I think all you have to look at is the special interrogatories that the jury answered. They found every one of them in favor of Officer Tompkins, which means had I have lost the trial, I more than likely would have received a Rule 50B motion on qualified immunity with those facts being decided by the jury. And none of those facts had anything to do with the vouching. They found that Mr. Diaz was an immediate threat, that his hands were not raised, and that he was still touching the gun when the initial shots were fired. So I don't think you get to plain error on this case because there would have been a qualified immunity granting, I believe, based upon the jury's answers of those special interrogatories. Okay. Any other questions? Okay. Thank you, Your Honor. I appreciate it. Thank you. You have a few minutes for rebuttal. I mean, I'm not sure what else to add. I mean, counsel has admitted, well, admitted that the district court did find instances of vouching, but yet he takes a different view on it, and that's fine. I get it. We were the ones who tried this case. It seems to me, pardon me. Yes, sir. That this was a close case or the district court judge who said that it wasn't a close case. Isn't that the finding that the court made and part of the ruling? Believing what I'm arguing that's predicated upon a procedural history that led up to this trial, which was always in the favor of Mr. Diaz and always indicated a close determination of do you believe Officer Tompkins, do you believe Mr. Solis. So it's not just me spouting off up here as a lawyer trying to make some sort of argument. It's a procedural history that has always found this evidence close. Well, you know, in summary judgment, the only question is are there genuine factual disputes about what happened. Sure. We're not saying that it's a close case when we find that there are tribal issues of fact. We're just saying there are material facts that are in dispute, and under the system the jury gets to decide what those facts are. Oh, of course, of course. The point I was just trying to make. When we reversed or affirmed the denial of qualified immunity, all we just said was the case needed to go to trial. Right. There were factual disputes. Right. And the burden of proof is very different in the criminal case. Oh, of course. You were successful. Of course. So I don't see what that has to do with this. Well, the only reason. You don't have the transcript in the criminal case either, do you? Yeah, the only reason I do have that, but the only reason I bring up the criminal case is just to show that there's been a long history and the story itself has always been consistent. It's always been, do you believe, what happened in those few seconds outside Mr. Solis' garage is two different versions of events that have always remained on opposite poles since 2010 when this incident occurred. So what is a police officer supposed to do when he finds himself confronted by a man crouched down in the shooting position with an AK-40, whatever, whatever the rifle was that he had? What is he supposed to do? Is he supposed to get shot at first? No, no. And if it was me, I'd start running. But, of course, I'm not a trained police officer. Can you tell us who put the gun down and what was your client's response to that? Well, this goes into what the trial was all about, was his response reasonable or not. There was testimony from Mr. Solis that once he realized it was a cop outside his driveway and saw the flashing lights, he started to put the gun down. And while this was going on, simultaneously Officer Tompkins draws his weapon, his Glock .45, and starts running across the driveway shooting to try and get back to his patrol car for cover. One could say the jury in the civil case found that conduct reasonable. Okay? And so what I'm trying to argue is both that conduct by Officer Tompkins and the conduct by Mr. Solis was so consistent and so close, close in the sense that it has never changed. It's always been the same story since eight years ago. That's why I come back to this idea which you raised in the beginning of, well, why don't we have the trial transcripts when you have this record? This is a unique case. You have this unique record in front of you which documents a sequence of events that has always been the same, even through the civil trial. And if you find that the evidence is close, then you don't need those trial transcripts because in a close case, then you look at the seriousness of the vouching. And under Draper and Nicola Chea and Sanchez that I've cited in my briefs, the vouching is serious enough and implicates whether my client had a right to a fair trial. This court could, if it shows, reverse on a plain error standard of review. And that's exactly what we're asking for. Okay. Thank you, counsel. Thank you. Matter is submitted.
judges: Paez, Bea, Royal